**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | |
|---|---|
| In re: RONNIE LEE HERRING and MARY ELIZABETH HERRING, ) ) ) | Case No. 07-61673-LYN |
| Debtors, ) ) | |
| ) | Adv. No. 08-06091 |
| W. STEPHEN SCOTT, Chapter 7 Trustee, ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | |
| WELLS FARGO BANK, LTD, and ) OPTION ONE MORTGAGE ) CORPORATION, and ) AMERICAN HOME MORTGAGE ) SERVICING, INC., ) ) | |
| Defendants, ) ) | |

## MEMORANDUM DECISION

This matter comes before the court on a complaint filed by W. Stephen Scott, Chapter 7

Trustee ("the Chapter 7 Trustee") against Wells Fargo Bank, LTD ("Wells Fargo"), Option One Mortgage Corporation ("Option One"), and American Home Mortgage Servicing, Inc. ("American Home") (collectively "the Defendants"). The complaint seeks damages and the avoidance of a lien based on a violation of the Truth in Lending Act ("the TILA"), which is codified at 15 U.S.C. §§ 1601, et seq., as augmented by 12 C.F.R. §226 (or "Regulation Z").[1]

## *Jurisdiction*

This Court has jurisdiction over this matter. 28 U.S.C. § 1334(a) & 157(a). This proceeding is a core proceeding. 28 U.S.C. § 157(b)(2)(A). Consequently, this Court may enter a final order. This memorandum shall constitute the Court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52, which is made applicable in this proceeding by Fed. R. Bankr. P. 7052.

## *Facts*

On or about November 22, 2006, Ronnie Lee Herring and Mary Elizabeth Herring ("the Debtors") refinanced a debt ("the Transaction") secured by their residence ("the Real Property"). Piedmont Title conducted the closing[2]. The new lender was Option One. Option One took a security interest in the Real Property, which interest was evidenced by a deed of trust ("the Deed of Trust"). Subsequently, Option One assigned its interest in the obligation to Wells Fargo, but

---

[1] Regulation Z generally has the force of law.

> . . . To implement the policies of TILA, the Federal Reserve Board promulgated "Regulation Z," which along with the Federal Reserve's interpretation of Regulation Z are to be considered "dispositive" by the courts unless "demonstrably irrational." Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565 (1980).

Fields v. Option One Mortgage Corp., et al. (In re Fields), 2006 WL 2191342 (E.D.Pa).

[2] The Debtors were referred to Piedmont Title by Greenwood Properties, LLC. Mr. Herring was unsure how the Debtors first came to contact Greenwood Properties, LLC. Greenwood Properties, LLC, received a disbursement of $9,642.75 at closing.

retained the right to service the obligation. Although both of the Debtors applied for the loan, only Mr. Herring was liable for the debt.

On September 5, 2007, the Debtors filed a chapter 13 petition initiating the above-styled bankruptcy case. On October 17, 2007, the Debtors voluntarily converted their case to a chapter 7 case. The plaintiff was appointed Chapter 7 Trustee.

On November 9, 2007, counsel for the Debtors sent a notice of cancellation to counsel for Wells Fargo and Option One. The notice was signed by counsel for the Debtors and by the Chapter 7 Trustee. The Defendants did not agree to the rescission.

On August 15, 2008, the Chapter 7 Trustee filed the above-styled adversary proceeding. After a ruling on a motion for summary judgment, a single cause of action remained. In that cause of action the Chapter 7 Trustee alleges that Option One, through its agent Piedmont Title, violated 15 U.S.C. § 1635 and C.F.R. § 226.23 by failing to provide Mr Herring with two copies of a notice of the right to rescind the Transaction ("the Notice of Right to Rescind").

The Debtors have stated that they do not have the funds to return the proceeds of the loan to the Defendants. The estate does not have funds to make such a payment.

*Discussion.*

The complaint seeks rescission of the Transaction, avoidance of the lien on the Real Property, and an award of damages under Sections 1635 and 1640 of the TILA.

The commencement of a bankruptcy case creates an estates that is comprised, among other things, of all of a debtor's legal and equitable interest in property. 11 U.S.C. § 541(a). The property accruing to the estate under section 541(a) includes all rights of action the debtor may have arising from contract. See 5 Collier on Bankruptcy, "Property of the Estate", ¶ 5411.08[4],

p. 541-49 (15th ed. rev.). In this case, the cause of action arises under statute and pursuant to contract, and is property of the estate.

In the case of any consumer credit transaction in which a security interest is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the debtor shall have the right to rescind the transaction within three days of the consummation of the transaction by properly notifying the creditor of his or her intention to do so. 15 U.S.C. § 1635(a). The creditor shall clearly and conspicuously disclose to the debtor his or her right to rescind. Id.

In a transaction that is subject to the right of rescission, the creditor must deliver two copies of a notice of right to rescind to each debtor who is liable on the debt. 12 C.F.R. § 226.23(b)(1). If the creditor fails to provide each such debtor with two copies of the Notice of Right to Rescind, then the period in which the debtor has a right to rescind is extended from three days to three years, or until the property is sold, which ever occurs first. 15 U.S.C. § 1635(f). A written acknowledgment by a debtor of receipt of two notices constitutes a rebuttable presumption that the two copies were in fact delivered. 15 U.S.C. § 1635 (c). The procedures that are to be used to effect rescission are set forth in Section 1635(b).

If a creditor is determined to have violated Section 1635, a court may, in addition to permitting rescission, award relief under section 1640 of Title 15. 15 U.S.C. § 1635(g). Section 1640 provides that the court may award actual damages, statutory damages, and costs, including attorneys' fees. 15 U.S.C. § 1640(a)(1)-(3). Any action under Section 1640 may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation. 15 U.S.C. § 1640(e).

A.

The first issue is whether the Debtors have the right to rescind the Transaction. The Debtor initiated the first step necessary to rescind the Transaction more than three days, but less than three years, after the consummation of the Transaction. During this period, the Transaction could have been rescinded only if Piedmont Title violated the TILA. The Debtors assert that Piedmont Title violated the TILA by failing to provide them with the requisite number of copies of the Notice of Right to Rescind. The Debtors only had a right to rescind the Transaction if Mr. Herring received less than two copies of the Notice of Right to Rescind.

The parties agree that Mr. Herring signed a copy of the Notice of Right to Rescind affirming that he received two copies of that document. This signed Notice of Right to Rescind creates a rebuttable presumption that Piedmont Title actually delivered two copies to Mr. Herring. The creation of a rebuttable presumption in favor of one party shifts the burden of coming forward with evidence (the burden of production) to the other party. See, e.g., Martino ex rel. Quintanar v. California Federal Bank, FSB, 2001 WL 1465140, *4 (N.D. Ill 2001) ("[A] prima facie case of employment discrimination creates a rebuttable presumption that employer's actions, if unexplained, were the result of impermissible factors and shifts the burden of production to the employer to articulate some legitimate, nondiscriminatory reason for its actions . . . .") and In re Betty'sHomes, Inc., 393 B.R. 671, 676 (Bankr.W.D.Ark. 2008) ("[T]he transfer must have been made while the debtor was insolvent. Although the debtor in possession has the burden of proof as to the elements of a preference, there is a presumption that the debtor was insolvent 'on and during the 90 days immediately preceding the date of the filing of the petition.' 11 U.S.C. § 547(f). That presumption shifts the burden of producing at least some evidence that

the debtor was solvent to the creditor.").

The presumption that Mr. Herring received two copies of the Notice of Right to Rescind has been created. The burden of coming forward with evidence has been shifted to the Chapter 7 Trustee to prove that Mr. Herring did not receive two copies of the Notice of Right to Rescind. If the trustee does come forward with sufficient evidence to overcome the presumption, the Defendants, then, have the burden of demonstrating by a preponderance of the evidence that two copies of the Notice or Right to Rescind were actually delivered to Mr. Herring.

Mr. Herring testified that he and his wife received a package containing copies of all the closing documents provided by Piedmont. He further testified that they placed the package in a safe in their house. Both Debtors testified that they did not open the package until they took it to their bankruptcy attorney. They did not examine the package before they left it at their attorney's office. They did not make copies of the documents in the package. They did not make a list of the documents in the package.

The Debtors further testified that, upon returning to their attorney's office two weeks later, there was only one copy of the Notice of the Right to Rescind in the package. The Defendants objected to this testimony of the Debtors as hearsay. Counsel for the trustee argued that the Debtors were only testifying as to the number of copies in the package when they returned to counsel's office, not to the statement of counsel at that time. Thus the Debtors' testimony may be paraphrased as asserting that they did not look in the package during the time that it was in their possession, and that after it was out of their possession for two weeks, there was only one copy of the Notice of Right to Rescind. The testimony was allowed in this form.

Their testimony without more is not sufficient to overcome the presumption created by

the signed Notice of Right to Rescind.  The Debtors had no knowledge regarding what happened once the documents left their possession.  They had no knowledge of how the documents may have been handled after they left them with counsel.  They are not percipient witnesses concerning the number of copies that were originally placed in the package, nor the number of copies that were in the package when it was later opened.

Even if the court were to rule that the testimony of the Debtors were sufficient to overcome the rebuttable presumption, Piedmont Title has met the burden of demonstrating the defense set forth in Section 1640(c),[3] which provides that a creditor may not be held liable for a violation under Section 1635 or 1640 if the creditor shows by a preponderance of evidence that the violation was (1) not intentional; and  (2) resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

The Plaintiff objects to the Defendants' proffer of evidence supporting a defense under section 1640(c) on the grounds that it constitutes an affirmative defense that was waived because it was not pleaded in the answer.   The Defendants assert that the defense may be asserted.  If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended.  The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits.  Fed.R.Civ.P 15 as made

---

[3] Section 1640(c) provides in full that:
A creditor or assignee may not be held liable in any action brought under this section or section 1635 of this title for a violation of this subchapter if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Examples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction and programing, and printing errors, except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error.

applicable by Fed.R.Bankr.P. 7015.  Also see Gallegos v. Stokes, 593 F.2d 372 (10th Cir. 1979) and Abel v. Knickerbocker Realty Co., 846 F.Supp 445 (D.Md. 1994).

First, the proffered evidence will aid in presenting the merits.  Second, the trustee will not be prejudiced by the affirmative defense.  The evidence consists solely of the testimony of Mr. Lee Brady, president of Piedmont Title, who the plaintiff deposed before trial and who the plaintiff cross-examined at trial.  The objection to the admission of evidence regarding Piedmont Title's office procedures is overruled.

Mr. Brady testified concerning the procedures used by Piedmont Title when conducting a closing.  As is the practice in the industry, Piedmont Title receives an "Instructions to Closing Agent" and a "Pre-Disbursement Checklist" prior to closing.  Those documents were received in this instance and were an integral part of the closing.  Mr. Brady further testified that he has conducted hundreds of closings over the last three, or more, years and that he has never been involved in a transaction where there was a difficulty with a notice of a right to cancel or a notice of a right to rescind.  He further testified that he has never had a complaint concerning the provision of the correct number of copies of a notice of right to rescind.  Even if the debtors testimony were sufficient to overcome the presumption, the Defendants have presented evidence sufficient to meet the burden of proof by a preponderance of the evidence on the issue of whether Mr. Herring received two copies.

Piedmont Title did not violate the TILA.  The debtor had no right to effect rescission prior to the filing of the petition.  The trustee has no right to effect rescission post-petition.

B.

Even if trustee proved Piedmont Title violated the TILA, the Court would not avoid the

lien on the Real Property unless the trustee tendered the amount borrowed less any payments that had been made by the Debtors. Because there are no such funds in the estate and because the Debtors stated that they are not in a position to tender the funds, neither could perform the act necessary to effect rescission.

When a debtor exercises his or her right to rescind a transaction, a number of effects follow. First, the debtor is not liable for any finance or other charge and any security interest given by the debtor becomes void. 11 U.S.C. §1635(b). Second, within 20 days after receipt of the notice of rescission, the creditor must return to the debtor any money or property given as earnest money, down payment, or otherwise, and must take any action necessary to terminate or void any security interest given under the transaction. Id. Third, the debtor must tender the collateral property to the creditor. Id.

The procedures prescribed by Section 1635(b) apply except when otherwise ordered by court. Id. The Fourth Circuit Court of Appeals has interpreted Section 1635(b) to mean that the court may condition a creditor's performance on the debtor's return of monies advanced under the contract. See Powers v. Sims & Levin, 542 F.2d 1216 (4th Cir. 1976). In Powers, the creditor advanced funds for home improvements to the debtor's home and also advanced funds to discharge a prior mortgage and a tax lien on the home. Before the expiration of the three-day right-to-rescind period, the debtors properly gave notice of their intent to rescind the contract and indicated that they would not make full restitution, but would tender only the home improvement costs and not the funds that had been used to discharge the mortgage and the tax lien. The District Court rendered judgment for the debtors. The Fourth Circuit refused to permit the debtors to avoid the creditor's lien without tendering the full amount of the funds advanced. The

Court reasoned:

> Rescission is an equitable doctrine, and there is nothing in the statutory provision of the right of rescission or in § 1635(b)'s provision of the procedural steps in effecting the right of rescission which limits the power of a court of equity to circumscribe the right of rescission to avoid the perpetration of stark inequity or to require that that be done now which ought to have been done in the first place. Section 1635(b), in its provision of a sequence of events, may work well in the normal case when both parties are properly advised and acting in full recognition of their rights and obligations. *But surely the Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers.*
>
> . . .
>
> *. . . What we do hold is that when rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due.*

Powers, 542 F.2d at 1221-1222 (Emphasis added.). Also see, Rudisell v. Fifth Third Bank, 622 F.2d 243, 254 (6th Cir.1980); Rachbach v. Cogswell, 547 F.2d 502, 505 (10th Cir.1976); La Grone v. Johnson, 534 F.2d 1360, 1362 (9th Cir.1976); Palmer v. Wilson, 502 F.2d 860, 862 (9th Cir.1974). Cf. Sosa v. Fite, 498 F.2d 114, 119 (5th Cir.1974).

The Debtors have indicated that they are not prepared to tender the funds advanced by Option One.[4] Under the holding in Powers, if the Debtors are not prepared to tender the funds, this Court would not permit them to exercise their right to rescind.

The Chapter 7 Trustee argues that the fact that the Debtors have filed their petition in bankruptcy should alter this conclusion. He argues that when a debtor files a petition in bankruptcy, he or she may rescind a loan transaction without tendering the loan proceeds less any payments already made. This Court disagrees.

---

[4] Counsel for the trustee stated that the Debtors "don't have the money to pay the money back". Transcript of Hearing, June 15, 2009, p. 11, l. 5-6.

The trustee stands in the shoes of the debtor but can only assert those claims that the debtor could have asserted *prior* to filing for bankruptcy. See, e.g., In re CBI Holding Co., 529 F.3d 432, 447 (2d Cir.2008). His rights, however, can be no greater than those of the debtor, unless he is specifically afforded such a right by the bankruptcy code.[5] See Chicago Board of Trade v. Johnson 546 U.S. 500 (1924)[6]. Dean Baird summarized the holding in Chicago Board of Trade in his treatise, "The Elements of Bankruptcy".

> In [Chicago Board of Trade, the debtor] owned a seat on the Chicago Board of Trade. If you had a seat on the Board of Trade at this time you could sell it, provided that you first paid back what you owed other members of the Board. [The debtor] went into bankruptcy owing money to lots of people including members of the Board of Trade. Those creditors who were members of the Board argued that the chair was not property of the estate and that the trustee in bankruptcy could not touch it. [They argued that the debtor] could sell the seat, but the members of the Board had the right to enjoy the proceeds of the sale. The trustee argued that the seat was property of the estate and that the proceeds should be divided pro rata among all of the creditors.
> The Supreme Court rejected both arguments. It held that the seat was property of the estate, but the creditors in bankruptcy could only enjoy what the debtor had. Because the debtor could not sell the seat without first paying off the other member of the Board, the general creditors could not enjoy it free of this encumbrance either. The debtor has a right to the proceeds of the sale only after the other members of the Board had been paid. The general creditors of the debtor derived their right from the debtor. If the debtor had the right to the proceeds only after the members of the Board were paid off, then the general creditors had the right to the proceeds only after the members were paid. *They could not do any better outside of bankruptcy, so they should not be able to do any better inside bankruptcy.*

Baird, Douglas G. "The Elements of Bankruptcy", p. 90-91 (1992) (Emphasis added.).

In order for the trustee to rescind the Transaction and avoid the lien without tendering the loan proceeds, less any payments, he must demonstrate that the Debtors would be able to do so in the absence of bankruptcy. As noted in the discussion above, in the absence of bankruptcy the

---

[5] Examples of such augmented rights are those found in 11 U.S.C. §§ 544 and 545.

[6] Opinions under the Bankruptcy Act of 1898 tend to retain their vitality under the Bankruptcy Code of 1978 unless specifically overruled by subsequent legislation or mandatory authority.

Debtors would be required to tender the net loan proceeds before rescission could be effected. The trustee cannot effect rescission without the tender of the loan proceeds.

The legislative history concerning Section 1635(b) supports the modification of the rescission process in the context of a bankruptcy proceeding.

> Upon application by the consumer or the creditor, a court is authorized to modify this section's procedures where appropriate. *For example, a court might use this discretion in a situation where a consumer in bankruptcy or wage earner proceedings is prohibited from returning the property.* The committee expects that the courts, at any time during the rescission process, may impose equitable conditions to insure that the consumer meets his obligations after the creditor has performed his obligations as required under the Act.

S.Rep. No. 96-368 at 29 (1980), U.S.Code Cong. & Admin.News 1980, pp. 236, 264-65.

The imposition of this requirement upon a trustee or a debtor is not uncommon in the Bankruptcy context.

> . . . the legislative history of § 1635(b) supports the modification of the rescission process in this context by specifically referring to bankruptcy. See supra ("For example, a court might use this discretion in a situation where a consumer in bankruptcy ...."). [In re Ramirez, 329 B.R. 727, 741-42 (D.Kan. 2005)]. Indeed, multiple courts have imposed conditions upon rescission in the bankruptcy context. See, e.g., Quenzer v. Advanta Mortg. Corp.,288 B.R. 884, 886-89 (D.Kan.2003)  Ray, 228 F.Supp.2d at 668-69; In re Webster, 300 B.R. 787, 802 (Bankr.W.D.Okla.2003); In re Apaydin, 201 B.R. 716, 724 (Bankr.E.D.Pa.1996); In re Buckles, 189 B.R. 752, 763-66 (Bankr.D.Minn.1995); Lynch v. GMAC, 170 B.R. 26, 30 (Bankr.D.N.H.1994) ("This Court can see no reason why the circuit courts and the district court[s], in exercising their equitable powers, can condition the right of rescission, but the bankruptcy court cannot.") [Footnote omitted.].

Wells Fargo Bank, N.A. v. Jaaskelainen, 407 B.R. 449,461-462 (D.Mass. 2009).

The trustee cites opinions in support of his position that the lien may be avoided without any repayment of the funds advanced. In Celona v. Equitable national Bank (In re Celona), 98 B.R. 705 (E.D.Pa. 1989), the creditor violated the TILA and Debtors filed an adversary complaint. The Bankruptcy Court ordered the creditor to satisfy the mortgage, void its security

interest, and to return all money and property received from the debtors. The United States District Court affirmed, concluding that "[j]udicial preconditioning of cancellation of the creditor's lien on the customer's tender is inappropriate in bankruptcy cases." Id. at p. 708. The District Court, citing In re Piercy, 18 B.R. 1004, 1007 (Bankr. W.D.Ky. 1982), further stated that it would be palpably unfair to deny the relief to which a consumer is entitled under the TILA because that consumer has also availed himself of bankruptcy relief. The Celona Court reasoned:

> In bankruptcy cases, equitable discretion in TILA rescissions is limited. A TILA rescission does not require the tender of consideration as an equitable prerequisite of rescission. Section 226.23(d)(4)[7] specifies that only procedures outlined in paragraphs (d)(2) and (3) of this Section may be modified by court order. 12 C.F.R. § 226.23(d)(4).

Celona, 98 B.R. at 708. The Court concluded that the Bankruptcy Court correctly found that it lacked the discretion to place a condition on the voiding of the security interest.

In Ramirez, the Court disagreed with this analysis of Section 226.23(d).

> When an agency charged with enforcing a statute has promulgated a regulation that adopts a permissible construction of the statute, a court must defer to that interpretation and not impose its own. [Footnote omitted.] The Supreme Court has indicated this rule is especially strong in the context of the TILA and Regulation Z,

---

[7]    12 C.F.R. 226.23(d) provides:

(d) Effects of rescission.

(1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.
(2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.
(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.
(4) The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order.

> where even official staff interpretations of the statute and regulation should control unless shown to be irrational. [Footnote omitted.] Regulation Z § 226.23(d)(1) recognizes the statutory mandate that a lender's security interest is void when a borrower rescinds a loan transaction. Subparagraph (d)(4) restates the power given to courts under § 1635(b) to modify the statutory procedures outlined in subparagraphs (d)(2) and (d)(3), including the power to modify the procedure to effect the rescission. Rather than being in conflict with TILA § 1635(b), Regulation Z § 226.23(d)(4) supports the court's authority to modify the rescission process, including allowing the lender to retain its security interest pending tender of the loan proceeds by the borrower. *This manner of modification is especially relevant in the bankruptcy context*. The Court finds nothing irrational about Regulation Z § 226.23(d)(4). [Footnote omitted.]

Rimarez, 329 b.R. at 741.  (Emphasis added.)  This Court agrees with the Court in Rimarez.

Further, the discussion in Celona is based only on Subparagraphs 226.23(d)(1)-(4), all of which are applicable whether the debtor has filed a petition in bankruptcy or not.   It follows that the effect of this law must be the same whether a debtor has filed a petition or not.  Because the Fourth Circuit Court of Appeals in Powers held that "when rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due", and because there is no bankruptcy statute instructing or permitting otherwise, this Court is compelled to require the Debtors, or the trustee, to give the Defendants their legal due, and tender the net loan proceeds to effect rescission.

The trustee also cited Myers v. Federal Home Loan Mortgage Co. v. Myers (In re Myers), 175 B.R. 122 Bankr. (D.Mass. 1994) which relies on Piercy.   In Piercy, the Court reasoned:

> *Bankruptcy, however, relieves the debtor from his obligation to pay the creditor upon rescission.* Conditioning rescission upon the debtor's payment therefore imposes an obligation from which the debtor has been legally freed. Unlike the situation absent bankruptcy, *there is a legitimate, legal impediment to the debtor's reciprocal performance.* It would be palpably unfair to deny the relief to which a consumer is entitled under TIL because that consumer has also availed himself of bankruptcy relief.

> To do so would require that the consumer choose between bankruptcy and TIL, something neither form of statutory relief contemplates.

Piercy, 18 B.R. at 1007 (Emphasis added.).

Bankruptcy relieves the debtor of paying his dischargeable obligations, but to permit a debtor to reap the benefits of rescission under the TILA without fulfilling his obligation under that same statute would be the equivalent of permitting a debtor to reject that part of a contract that constituted his obligations, while accepting that part of the same contract that constitutes the other parties obligations to the debtor. This a debtor may not do.

Just as with a contract, a court will not require a creditor to perform his obligations under the TILA without requiring the debtor to perform his. Rescission, like a contract, is a bundle of obligations and benefits for each party. A debtor in bankruptcy cannot avoid the former and still claim the latter.

Nor is it relevant that there is a legal impediment to the bankruptcy debtor's reciprocal performance. There are, no doubt, many debtors outside of bankruptcy who cannot obtain rescission simply because they do not have the money to tender to the creditor. It may be concluded from the holding in Powers that this would be no reason for a court to avoid a creditor's lien in the absence of the repayment of the loan proceeds outside bankruptcy. There is no rule of law that changes this inside of bankruptcy.

### *Conclusion*

It is concluded that Mr. Herring received the requisite number of copies of the Notice of Right to Rescind the Transaction. Even if he did not receive the requisite number of copies, rescission would not be appropriate because neither the trustee nor the Debtors has tendered the net loan proceeds to the Defendants.

An appropriate judgment shall issue.

Upon entry of this memorandum the Clerk shall forward copies of this memorandum to the chapter 7 trustee, C. Conner Crook, Esq., and Madeline A. Trainor, Esq.

Entered on this 3rd day of September, 2009.

_____
William E. Anderson
United States Bankruptcy Judge